**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

                                    Case No. 13-11245

    v.                          HON. TERRENCE G. BERG

RONALD DAVIS, and DIANE DAVIS,

       Defendants.

_____/

**OPINION AND ORDER GRANTING:**
**(1) PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND**
**(2) DEFENDANTS' MOTION TO PRESERVE CLAIM OF EXPENSES**

     This is a civil action brought by the United States pursuant to 26 U.S.C. §§

7401 and 7403, in order to reduce federal tax assessments to judgment and enforce

its federal tax liens against property owned by Defendants in this district.

On January 9, 2014, the United States filed a motion for partial summary judgment

(Dkt. 19), seeking (1) entry of a judgment against Ronald Davis for penalties

assessed against him under 26 U.S.C. § 6672, and (2) foreclosure and the forced sale

of Ronald Davis' personal residence, 6735 Meadowlake Road, Bloomfield Hills,

Michigan, in satisfaction of federal tax liens attached to his half-interest in that

property.

     On January 25, 2014, Ronald Davis filed a response to the government's

motion (Dkt. 23), consenting to an entry of judgment against him in the amount of

$1,150,054.46.  The same day, his wife Diane Davis filed a separate response,

objecting to the government's request for a forced sale of the couple's shared home.

Thus, the only outstanding issue with respect to the government's motion is whether the Court should grant the Government's request for a forced sale of the Davis' Bloomfield Hills residence.

Additionally, on February 27, 2014, Diane Davis filed a motion to preserve a claim for expenses paid in conjunction with an agreed-to sale of a second property owned by the couple.

Both motions were fully briefed and the Court heard oral argument on April 30, 2014.  As discussed further below, because there are no factual issues in need of resolution, the government's motion for partial summary judgment shall be GRANTED.  Likewise, the Court shall exercise its authority under 26 U.S.C. § 7403 and direct the distribution of the proceeds of the agreed-to sale in accordance with the interests of the parties, such that Defendant Diane Davis' motion is also GRANTED.

## I.      ANALYSIS

A federal tax lien is created by operation of law when a taxpayer refuses or neglects to pay a tax after payment is demanded.  26 U.S.C. § 6321.  It is undisputed that such a lien exists in this case.  Further, the lien extends to "all property and rights to property, whether real or personal, belonging to" Defendant Ronald Davis.  *Id.*

Pursuant to 26 U.S.C. § 7403, the United States now seeks to enforce the federal tax lien in this suit, requesting a judicial order to sell that property and

distribute the proceeds to the United States and such other claimants as may establish an interest in the property.

"The threshold question ... in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had property or rights to property to which the tax lien could attach." *Blachy v. Butcher,* 221 F.3d 896, 905 (6th Cir. 2000). Under Michigan law, the Davis' residence is held by the couple as a tenancy by the entireties. The parties do not dispute that (1) federal tax liens arising out of liabilities assessed against Ronald Davis as an individual nevertheless attach to his interest in property held in tenancy by the entireties, and (2) those liens can be foreclosed upon, even as to property held in tenancy by the entireties. *United States v. Craft,* 535 U.S. 274 (2002). Rather, Diane Davis argues that the Court should exercise its equitable discretion and decline the Government's request for a forced sale. *See United States v. Rodgers,* 461 U.S. 677, 709-12 (1983).

"The plain language of § 7403 indicates that a district court *may* order the sale of property, which allows the district court 'limited room ... for the exercise of reasoned discretion.' However, the Supreme Court has stated that this discretion is limited and 'should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes.'" *United States v. Barr*, 617 F.3d 370, 377 (6th Cir. 2010) (quoting *Rodgers*, 461 U.S. at 706, 711) (Batchelder, C.J., dissenting in part)); *see also United States v. Winsper*, 680 F.3d 482, 489 (6th Cir. 2012) (explaining that "the *Rodgers* factors do

not address the scope of the *government's* discretion to foreclose, but, rather, the *district court's* discretion *not* to foreclose.")

## A.     The *Rogers* Factors and Discretion Under § 7403

Under *Rodgers,* the factors that a district court should consider before ordering a sale include the following:  1) "the extent to which the Government's financial interest would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes;" 2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors;" 3) "the likely prejudice to the third party, both in personal dislocation costs and in … practical undercompensation;" and 4) "the relative character and value of the non-liable and liable interests held in the property." *Rodgers*, 461 U.S. at 710-11.

As to the first factor, there can be no real dispute that the financial interest of the United States would be substantially prejudiced if sale of the entire property were denied; even assuming that Ronald Davis' entireties interest could be reduced to a half-interest in a tenancy in common, it is exceedingly unlikely that any purchaser could be found for such a half-interest in the property.  Further, based on the $400,000 estimated fair-market value of the Davis' property, the federal tax lien is of such a size that it would fully consume the 50% of the proceeds to which

4

Ronald Davis would be entitled in the event of a sale.  Thus, the first factor weighs in favor of foreclosure and allowance of a forced sale of the property.

The second factor, the expectation of the third-party as to alienation, weighs in favor of Diane Davis, as in the normal course of events there is "a legally recognized expectation that property owned by a husband and wife as tenants by the entirety will not be subject to forced sale to satisfy the debts of one spouse." *U.S. v. Winsper*, 680 F.3d at 491.

The third *Rogers* factor, whether there would be prejudice to the third-party, weighs slightly in the government's favor.  Despite Diane Davis' assertions that she would face practical undercompensation based on the fact that a 50% division of the proceeds would fail to compensate her for survivorship interest in the property (or, more specifically, for the actuarial likelihood that she would inherit the home free and clear of her husband's interest), this argument has already been considered and rejected by the Sixth Circuit.  *See Barr*, 617 F.3d at 374-76 (establishing that spouses have equal interests in the marital home).[1]  Further, the Sixth Circuit has repeatedly discounted arguments as to sentimental value.  *See id.* (citing *United States v. Bierbrauer*, 936 F.2d 373, 375-76 (8th Cir. 1991)); *Winsper*, 680 F.3d at 492

---

[1] Although this Court appreciates the rationale behind Diane Davis' argument concerning this factor, she has failed to persuade the Court that she would be unduly harmed by having to relocate or that she would be unable to acquire adequate housing using her portion of the sale proceeds (presumed to be roughly $200,000, and which does not include her portion of the proceeds of the agreed-to sale of the couples' other property.  The Court has also considered Diane Davis' supplemental brief arguing in favor of an evidentiary hearing (Dkt. 32), and nevertheless concludes that she has failed to articulate a genuine dispute as to any material question of fact—as stated previously, Diane Davis' "practical undercompensation" argument is grounded in a reasoning that has been largely rejected by the Sixth Circuit.  And, to the extent that she may believe her finances (either presently, or with the addition of her interest in the proceeds of a forced sale) would be insufficient to allow her to acquire a life interest in an equivalent property, she has failed to present any non-speculative argument or a sufficiently-detailed sworn statement to that effect.

5

(same).  Because any potential prejudice that may result from a forced sale would be no greater than the prejudice that would befall any other non-liable third-party in the event of any other foreclosure sale, this alone cannot be a sufficient basis to deny the government's request for foreclosure.

Finally, the fourth *Rodgers* factor, the relative character and value of the non-liable and liable interests held in the property, is largely irrelevant as the Sixth Circuit has already concluded that under Michigan law there is a presumption that the interests of the liable and non-liable spouses are equal.  *Barr*, 617 F.3d at 376; *see also United States v. Barczyk,* 434 F. App'x 488, 494 (6th Cir. 2011); *Winsper*, 680 F.3d at 492-93.[2]

Therefore, having considered the factors articulated in *Rodgers* and the relevant Sixth Circuit precedents, the Court concludes that foreclosure is warranted and that the government is entitled to summary judgment.  The Government's motion for partial summary judgment (Dkt. 19) is thus **GRANTED**; the government is directed, within fourteen days, to prepare and submit a Proposed Order of Sale for the Court's consideration.

**B.     Preservation of Claim of Expenses of Sale**

Also before the Court is Diane Davis' motion to preserve a claim as to recoupment of certain expenses related to the sale of the couple's condominium

---

[2] Although the Court is bound by the fifty-percent allocation rule announced by the majority in *United States v. Barr*, the Court notes that, in the absence of this clear precedent, it finds the approach of the dissent on this point to be more persuasive and practical.  *See Barr*, 617 F.3d at 379 (Batchelder, C.J., dissenting in part).  Both former Chief Judge Batchelder, and Judge White in her concurrence in *United States v. Barczyk*, have expressed the view that actuarial evidence should be considered when calculating the spouses' respective shares in the property.  Their reasoning makes logical sense, but it is not the precedent of this Circuit, which this Court must apply.  *See Barczyk*, 434 F. App'x at 494 (White, J., concurring).

property, Wilderness #9, Glen Arbor, Michigan, which was identified in the complaint and—as far as the Court is aware—previously disposed of through an agreed-to sale.  Essentially, Davis argues that the Government has been unjustly enriched by one-half of the value of certain costs and expenses she incurred in preparing the second property for sale, as well as one-half the condominium assessments that were required to be paid as a condition of sale.

Although the Government raises a variety of arguments in opposition to Davis' motion, none of them are logically persuasive.  Upon the filing of the complaint under § 7403, this Court was empowered to "adjudicate all matters involved therein and finally determine the merits of all claim to and liens upon the property."  The Court's powers under the statute include the authority to appoint a receiver to enforce the lien, and to grant that receiver all the powers of a receiver in equity.  Here, instead of requiring the Court to appoint a receiver to dispose of their condominium, Defendants worked with the Government to prepare the property for sale and to dispose of it through an agreed-to transaction.  Diane Davis should not be penalized for her cooperation.  The legal fees necessary to compel the owners of the unit beneath the property to pay for damage that they had caused to the Davis' unit, as well as the association fees, are all expenses that would have been paid by the receiver had the property been put into receivership.  Moreover, Davis cites to several cases where other district courts provided for the expenses of sale to be paid prior to a division of proceeds.  Thus, the costs of this sale should be split equally

between the parties, as equally as they would have been split in the event of a judicial sale.

Section 7403 explicitly allows the Court in ordering a judicial sale to "decree . . . a distribution of the proceeds of such sale according to the findings of the court in respect to the interest of the parties and of the United States." That express grant of authority is given at the conclusion of a sentence that starts by directing the Court to "to adjudicate all matters involved therein and finally determine the merits of the all claims to and liens upon the property" identified in the complaint. The fact that the parties agreed to a non-judicial sale of such a property does not divest the Court of its authority to distribute the sale proceeds with respect to the parties' interests. Likewise, the Government has offered no case law contrary to this reading of the statute. Accordingly, Diane Davis' motion (Dkt. 24) is **GRANTED**; Defendant Diane Davis is directed, within fourteen days, to submit to the Court an affidavit and proposed Order attesting to the total amount of expenses actually paid by Defendants.

**SO ORDERED**.

Dated:  September 18, 2014                              s/Terrence G. Berg
                                                       TERRENCE G. BERG
                                                       UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically submitted on September 18, 2014, using the CM/ECF system, which will send notification to all parties.

                                                       s/A. Chubb
                                                       Case Manager